IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUANITO MARSHALL, | ) | Case No. 1:24-cv-00012 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| ROCHELLE MOORE, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    Introduction

On December 20, 2023, Petitioner Juanito Marshall (hereinafter "Marshall" or "Petitioner"), a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF Doc. 1). On April 9, 2024, Respondent filed its Return of Writ. (ECF Doc. 7). Marshall filed his Traverse on June 11, 2024 (ECF Doc. 11) and an Amended Traverse on June 25, 2024 (ECF Doc. 12). Respondent filed a sur-reply on June 27, 2024 (ECF Doc. 13), as did Marshall on July 8, 2024 (ECF Doc. 14). The matter is therefore ripe.

The District Court has jurisdiction over the petition under § 2254(a). On January 11, 2024, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of Jan. 11, 2024). On April 2, 2024, the case was reassigned to me pursuant to General Order 2024-05. (Non-document entry of Apr. 2, 2024).

1

Because the grounds in Marshall's petition have been procedurally defaulted and excuse is not available to him, I recommend the District Court deny his petition.

## II. Factual Background

The Ohio Court of Appeals, Eighth Appellate District, Cuyahoga County, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Marshall rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District presented the facts as follows:

{¶ 2} On November 8, 2018, then 16-year-old K.H. revealed that she had been raped when she was seven. She and her mother, C.E., got into an argument, and K.H. yelled that her mother did not care about her and did not know she had been raped in the past. K.H. told C.E. that Marshall was the rapist. C.E. immediately called Marshall, and then her sister, T.T. Marshall and T.T. had been in a relationship years ago and share a daughter, Al.M. K.H. and C.E., who had moved out of state, immediately arranged to return to Ohio. On November 12, 2018, C.E., K.H., and T.T. went to the Broadview Heights police station to report the rapes.

{¶ 3} On March 4, 2019, Marshall was indicted as follows: Count 1, rape (fellatio) by force of a victim under the age of ten; Count 2, kidnapping of a victim under the age of eighteen with a sexual motivation; Count 3, endangering children, causing serious physical harm; Count 4, disseminating matter harmful to a juvenile where the victim was under thirteen years of age; Count 5, rape (fellatio) by force of a victim under the age of ten; Count 6, rape (anal penetration) by force of a victim under the age of ten; Count 7, endangering children, causing serious physical harm; Count 8, kidnapping of a victim under the age of eighteen with a sexual motivation; Count 9, disseminating matter harmful to a juvenile where the victim was under 13 years of age; Count 10, endangering children.

{¶ 4} The parties filed several pretrial motions. Most relevant to this appeal, Marshall filed a motion to exclude any testimony regarding his past sexual behavior with T.T. Marshall argued that testimony from T.T. as to digital anal penetration during intercourse and asking her to open her mouth wider during oral sex was not relevant or admissible. In his motion, Marshall argued that the evidence was inadmissible under the rape shield statute R.C. 2907.02(D) and that it was inadmissible under both Evid.R. 404(B) and R.C. 2945.59. In response, the state argued that the evidence was both admissible and relevant and that it would show Marshall's plan and modus operandi.

{¶ 5} The trial court heard testimony from T.T. prior to trial. After hearing her testimony, the trial court held in abeyance its ruling on Marshall's motion. The

court found that the admissibility of T.T.'s testimony would depend on K.H.'s testimony.

{¶ 6} The trial began on February 12, 2020, and the testimony was as follows: Sometime in early 2009, K.H., C.E., and M.M., moved into Marshall's home in Broadview Heights. At that time, Marshall, T.T., and their daughter Al.M. lived in the home. At the time, C.E. had guardianship of M.M., her aunt, who had dementia. Moving in allowed C.E. to secure T.T.'s assistance in caring for M.M. The home had five bedrooms. K.H., C.E., and M.M. slept in a downstairs bedroom. Marshall and T.T. had the master bedroom on the second floor. Al.M.'s bedroom was next to the master. K.H. would share Al.M.'s room on occasion. Marshall;s four other children, J.M., Am.M., I.M., and G.M. would periodically stay at the house. When all the kids were there, the boys would sleep in one room and the girls would sleep in another.

{¶ 7} K.H. thought of Marshall as an uncle and treated him as such. They had a good relationship. Marshall would always compare K.H. to T.T., telling her that they looked a lot alike and that when K.H. grew up she was going to be prettier than T.T.

**The First Offense**

{¶ 8} K.H. testified that the first offense happened when C.E. and T.T. had gone shopping. Al.M. was watching TV on the first floor while K.H. was playing in Al.M.'s bedroom. Marshall was in the master bedroom, which also had a computer room. K.H. testified that Marshall called her by name, and she went into the computer room. When K.H. entered, she saw Marshall seated with his pants open and his penis exposed. Marshall started moving his penis and said to K.H., "I know you see it." K.H. testified she was scared and thought she was in trouble. When she tried to leave, Marshall grabbed her by the arm and wouldn't let her go. At that point, they heard the garage door open. Marshall let her go and K.H. ran out of the room.

{¶ 9} T.T. testified that Marshall told her about the incident; however, according to T.T., Marshall told her that K.H. inadvertently saw his penis when he was in the computer room. He alleged that he was wearing loose pants and his penis was exposed. Marshall told T.T. that he had an "uncle-niece" conversation with K.H. about how that was inappropriate. T.T. told C.E. about the incident. C.E. was upset when she heard, then talked to K.H. about it. Based on the information C.E. received at the time, she did not feel it was necessary to leave the home or take any further action.

**The Second Offense**

{¶ 10} K.H. testified that the second offense happened a couple of months after the first incident. K.H. was unsure exactly when this happened but was sure that T.T. was no longer living in the home at that time.

{¶ 11} During the second incident, K.H. testified that she woke up and her mother and great aunt were still sleeping. K.H. went upstairs to the master bedroom and started playing cards with Marshall. At some point, Marshall began to pick K.H. up and throw her on the bed. At one point, he picked her up and digitally penetrated her anus through her underwear before tossing her on the bed. Marshall asked her if it hurt and K.H. nodded yes. Marshall then grabbed a DVD that had a picture of a naked man and woman on it. The woman's legs were spread open, and the man was lying between them. K.H. testified that Marshall asked K.H. if she wanted that picture to be the two of them. K.H. didn't know what to say, so she nodded yes. After that, they kept playing cards until C.E. called up for K.H. and asked what she was doing. K.H. told C.E., "nothing, playing cards," then went back downstairs. K.H. did not tell C.E. what happened at that time because she was scared.

{¶ 12} On cross-examination, the defense questioned K.H. about a videotaped interview she gave to the police. K.H. testified that she did not recall some parts of her interview. On her second day of testifying, K.H. remembered that there were two incidents of oral sex, not one as she had previously testified. K.H. was not able to remember the details of the first incident of oral sex, only that it either happened during the second incident or sometime between the second and third incident.

{¶ 13} The trial court then permitted the defense to show K.H. her videotaped statement to refresh her recollection. After viewing the video, K.H. recalled telling two of Marshall's children, Am.M. and J.M., about performing oral sex on Marshall. Additionally, she remembered that Am.M. and J.M. advised her to bite Marshall if he tried to make her do it again.

**The Third Offense**

{¶ 14} The third offense happened sometime after K.H., C.E. and M.M. moved out of the Broadview Heights home. K.H. was visiting the home to play with Marshall's children. All the kids were in the master bedroom with Marshall. Marshall would take turns throwing the kids on the bed. Marshall then told all the kids except K.H. to leave the room. J.M. hesitated, but, per K.H., Marshall yelled at him and J.M. left.

{¶ 15} Marshall then locked the door and got under the covers. He then pulled his pants down and made K.H. put her head under the covers. Marshall then told her to "open" and made her perform fellatio on him. He then proceeded to put his hand on K.H.'s head and move it up and down. K.H. bit him. Marshall asked her if she

4

was okay and K.H. told him no. He then asked K.H. if she wanted to continue and K.H. told him no. K.H. then unlocked the door and ran downstairs.

{¶ 16} After viewing her videotaped statement, K.H. further recalled that before the third offense, she was sleeping in a bed with Marshall's two oldest daughters, Am.M. and I.M. Marshall came into the room and got into bed with them, spooning K.H. When they all woke up, they went into the master bedroom and Marshall began throwing them on the bed. Then Marshall kicked the other children out of the room and made K.H. stay. K.H. testified that the remainder of the third offense incident occurred as she had testified earlier.

**T.T.'s Testimony**

{¶ 17} After K.H.'s testimony, the trial court decided to allow T.T.'s testimony about Marshall's habits with limits. The trial court permitted her to testify that Marshall repeatedly compared K.H. to T.T. and suggested that K.H. would grow to be more beautiful than T.T. The trial court also allowed T.T. to testify about Marshall's preference for digital anal penetration. The court found there was insufficient basis to allow T.T. to testify about Marshall telling her to open her mouth wider during oral sex.

{¶ 18} T.T. testified that she met Marshall around 2000 or 2001 when she was 18 or 19 years old. They were initially friends and then began seeing one another. T.T. became pregnant, around January of 2005. T.T. and Marshall moved in together within a year of Al.M.'s birth.

{¶ 19} T.T. testified that Marshall began comparing K.H.'s looks to hers when K.H. was five. Marshall would repeatedly say that K.H. and T.T. were "babes," and that K.H. would be prettier than T.T. when she grew up.

{¶ 20} T.T. testified that C.E. called her in November 2018 about K.H.'s allegations. When C.E. and K.H. returned to Ohio, T.T. went with them to the police station. T.T. talked to Det. Ambrose separately. T.T. testified that she did not discuss K.H.'s allegations with either K.H. or C.E. T.T. first heard the nature of the allegations when she spoke to Det. Ambrose. When she learned that K.H. alleged that Marshall performed digital anal penetration, T.T. recalled that he did the same thing to her when they had sex.

{¶ 21} At trial, T.T. testified that when she and Marshall began having sex, he insisted on digital anal penetration. T.T. indicated she was uncomfortable with it at first and they talked about it. Marshall told T.T. that he did it because he felt it made his partner more aroused.

5

**Am.M.'s Testimony**

{¶ 22} Am.M., Marshall's oldest daughter, also testified. Am.M. testified that she became aware that K.H. had disclosed her allegations against Marshall to others in November of 2018 when she received a call from her stepmother, T.M. Am.M. spoke to Det. Ambrose on November 21, 2018. Also, Am.M. testified that in either 2008 or 2009, K.H. told her that Marshall and K.H. had touched each other's private parts and would watch videos. Am.M. believed that her other siblings, J.M., I.M., and G.M. were present during this conversation. Am.M. denied knowing about any oral sex and did not remember telling K.H. to bite Marshall's penis. Am.M. did remember Marshall commenting that K.H. looked like T.T.

{¶ 23} Am.M. specifically remembered one day sitting on the stairs at the Broadview Heights house, looking up, and seeing Marshall carry K.H. into his room and close the door. Am.M. testified that Marshall and K.H. were laughing and joking. Am.M. remembered this incident because it was shortly after K.H. told her what had been happening with Marshall.

{¶ 24} Am.M. further disclosed that she did not want to be a witness and had not had contact with Marshall's side of the family since November 2018.

**Defense Case-in-Chief: T.M.'s testimony**

{¶ 25} T.M., Marshall's wife, testified on behalf of the defense. T.M. had known Marshall for 22 years and is the mother of two of his children, J.M. and I.M. T.M. testified that Marshall and T.T. were having problems in the beginning of 2009. She was aware of this because on two separate occasions Marshall stayed with her to avoid issues at home. T.M. testified that he moved in with her permanently about June 8, 2009, and they have been together since that date.

{¶ 26} T.M. testified that, except for a four-year period when Marshall was incarcerated in Texas, he has lived with her. T.M. did not believe anyone lived in the Broadview Heights house after June 8, 2009, because the house was foreclosed and was scheduled to be sold at sheriff's sale on June 29, 2009. However, she acknowledged on cross-examination that the house did not sell until a few years later. T.M. was unaware that C.E., K.H., and M.M. lived with Marshall in 2009. T.M. also was adamant that her children did not visit the Broadview Heights house after January 2009 and believed the same was true for Marshall's two other children, Am.M. and G.M.

**The Verdict**

{¶ 27} After the state's case-in-chief, the trial court dismissed one count of disseminating material harmful to a juvenile pursuant to Crim.R. 29. At the end of all the testimony, the remaining charges went to the jury.

6

{¶ 28} The jury found Marshall guilty on all of the remaining counts.

*State v. Marshall*, No. 109633, 2021 WL 5984420, *1-4 (Ohio Ct. App. Dec. 16, 2021)

("*Marshall I*").

## III.    State Court History

### A.    Trial Proceedings

Marshall was indicted on ten counts by the January 2019 term of the Cuyahoga County

Court of Common Pleas grand jury. (ECF Doc. 7-1, pp. 5-10). The indictment included: three

counts of Rape under O.R.C. 2907.02(A)(1)(b); two counts of Kidnapping under O.R.C.

2905.01(A)(4); three counts of Endangering Children under O.R.C. 2919.22(A); and two counts

of Disseminating Matter Harmful to Juveniles under O.R.C. 2907.31(A)(1). (*Id.* at pp. 5-10).

Marshall pled not guilty to all charges. (*Id.* at p. 11).

On February 10, 2020, Marshall filed a motion *in limine* to exclude any evidence relating

to specific instances of his sexual activity, as well as opinion and reputation testimony of his

sexual activity. (*Id.* at pp. 12-16). On February 12, 2020, the State opposed. (*Id.* at pp. 17-23).

On February 13, 2020, the trial court denied the motion *in limine*, stating that other acts evidence

may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident. (*Id.* at p. 24). Accordingly, the court found that the other-act

evidence was relevant, was allowed to show activity in conformity and for a legitimate purpose,

and the probative value of the other-acts evidence was substantially outweighed by the danger of

unfair prejudice.[1] (*Id.*).

---

[1] I note that the trial court's findings appear to be internally inconsistent, where it both permits the admission of other-acts evidence but still determines that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. (*See* ECF Doc. 7-1, p. 24).

On February 19, 2020, the jury returned a verdict of guilty of Rape under O.R.C. 2907.02(A)(1)(B) as charged in Counts One, Five, and Six of the indictment; Kidnapping under O.R.C. 2905.01(A)(4) as charged in Counts Two and Eight; Endangering Children under O.R.C. 2919.22(A) as charged in Counts Three, Seven and Ten; and Disseminating Matter Harmful to Juveniles under O.R.C. 2907.31(A)(1) as charged in Count Four. (*Id.* at p. 25). The jury further found that, at the time of the rape offenses under § 2907.02(A)(1)(B), the victim was under ten years of age, and that the defendant did purposely compel the victim to submit by force or threat of force; as to the kidnapping offenses under § 2905.01(A)(4) that the victim was under 18 years of age and that the defendant did commit the offense with a sexual motivation; and as to the endangering children charges under § 2919.22, that the defendant caused serious physical harm to the victim. (*Id.*). A Rule 29 motion was granted as to Count Nine. (*Id.* at p. 28).

On February 25, 2020, Marshall was sentenced on Counts One, Four, Five, Six, and Ten. (*Id.* at p. 29). Counts One, Two, and Three merged, and the state elected to sentence on Counts One; Counts Six, Seven, and Eight merged, and the state elected to sentence on Count Six. (*Id.*). The court sentenced Marshall to life in prison with eligibility for parole after 25 years. (*Id.*). Marshall was required to register as a Tier III sex offender of a child victim. (*Id.*). He received jail time credit for seven days. (*Id.*).

### B.    Direct Appeal

On March 24, 2020, Marshall filed his notice of appeal with Ohio's Eighth District Court of Appeals. (ECF Doc 7-1, pp. 35). He retained counsel to represent him on appeal on April 2, 2020. (*See id.* at p. 312). On August 26, 2020, Marshall filed his appellant's brief, and the State filed its appellee's brief on October 15, 2020. (*See id.*). However, both of these briefs were

struck from the record for including the name of Marshall's minor victim. (*Id.*). Marshall filed

his redacted brief on November 2, 2020 and raised the following four assignments of error:

> **Assignment of Error No. 1.** The convictions of rape and kidnapping are against the manifest weight of the evidence.
>
> **Assignment of Error No. 2.** The trial court erred in its admission of evidence which did not qualify under the exceptions for propensity evidence under Evid.R. 404(b).
>
> **Assignment of Error No. 3.** The trial court plainly erred in allowing evidence under Evid.R. 404(b), but failing to provide the jury with a limiting instruction on the use of such evidence.
>
> **Assignment of Error No. 4.** Defense counsel provided ineffective assistance of counsel, in violation of the 6th Amendment to the United States Constitution, in failing to object to the trial court's failure to provide the jury with a limiting instruct[ion] on the use of 404(b) evidence.

(*Id.* at p. 49). The State filed its redacted brief in response on November 3, 2020. (*Id.* at pp. 73-

96). Marshall's original reply brief was not struck from the record and was filed on October 20,

2020. (*Id.* at pp. 97-109; *see also id.* at p. 312). On December 16, 2021, the state appellate court

affirmed Marshall's convictions and sentence. (ECF Doc. 7-1, pp. 110-36; *see also Marshall I*,

No. 109633, 2021 WL 5984420).

### C. Motion for Reconsideration

On December 27, 2021, with counsel, Marshall filed a motion for reconsideration with

the state appellate court. (ECF Doc. 7-1, pp. 138-47). In this motion, Marshall asserted:

> 1. The Court's determination that the evidence was overwhelming was clearly erroneous; and
>
> 2. The Court failed to consider the effect that inadmissible evidence had on the verdict.

(*Id.*).

The state filed its brief in opposition on January 25, 2022. (*Id.* at pp. 148-58). Marshall

filed his reply brief on February 1, 2022. (*Id.* at 159-67). On February 3, 2022, the state appellate

court denied the motion for reconsideration, finding that Marshall had not identified an obvious error in its decision nor raised an issue that was not fully considered by the court when it should have been. (*Id.* at p. 168).

### D.     Motion to Reopen Appeal

On March 15, 2022, now with counsel Kenneth D. Myers, Marshall filed an application to reopen appeal pursuant to Appellate Rule 26(B)(2)(C). (*Id.* at pp. 169-84). In this motion, Marshall presented that his appellate counsel should have presented the following assignments of error:

1.     Appellant was denied effective assistance of counsel when trial counsel failed to object, failed to seek a limiting instruction and failed to move for a mistrial when a witness revealed that defendant had been incarcerated;

2.     The trial court erred by permitting a social worker who had already been excluded as an expert witness to testify as a fact witness about the reasons a rape victim may delay reporting the incident and trial counsel was deficient in failing to ask for a limiting instruction;

3.     The trial court erred by allowing inadmissible evidence;

4.     Appellant was denied effective assistance of counsel when trial counsel failed to object to the prosecutor making improper statements in closing arguments and failed to move for a mistrial or a new trial due to prosecutorial misconduct.

(*See id.*). The State opposed on May 4, 2022. (*Id.* at pp. 187-94). The state appellate court denied Marshall's application to reopen on August 1, 2022. (*Id.* at pp. 195-215; *see also State v. Marshall*, No. 109633, 2022 WL 3105845 (Ohio Ct. App. Aug. 1, 2022) ("*Marshall II*")).

### E.     Appeal to the Ohio Supreme Court

Marshall, again acting with Kenneth Myers as counsel, timely appealed the appellate court's decision and its denial of his Application for Reconsideration to the Ohio Supreme Court on March 21, 2022. (ECF Doc. 7-1, pp. 216-18). In his Memorandum in Support of Jurisdiction, Marshall raised the following two propositions of law:

1.    In determining whether the erroneous admission of 404(B) evidence is harmless error, an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record. (State v. Morris, 2015-Ohio-5052, P. 33, 141 Ohio St. 3d 399, 242 N.E. 3d 1153, followed[)].

2.    The uncorroborated testimony and statements to others by the complainant alone cannot provide "overwhelming" evidence of guilt in harmless error cases.

(*Id.* at pp. 219-36; 238-65). On April 18, 2022, Marshall filed a supplement indicating that the Ohio Supreme Court had accepted a case directly relevant to his case, and requesting the court accept his case and hold it for decision in the other case. (*Id.* at pp. 266-69). The State filed its memorandum in opposition to jurisdiction on April 20, 2022. (*Id.* at pp. 270-82). On June 7, 2022, the Ohio Supreme Court accepted Marshall's appeal, sua sponte held his cause for decision in the related case, No. 2022-0099, *State of Ohio v. Juba Mohammed Ali*, and denied his motion to accept the case and hold the decision. (*Id.* at p. 283; *see also State v. Marshall*, 188 N.E.3d 181 (Ohio 2022) (table) ("*Marshall III*")). On March 30, 2023, the Ohio Supreme Court dismissed Marshall's appeal as having been improvidently accepted. *State v. Marshall*, 217 N.E.3d 781, *reconsideration denied*, 210 N.E.3d 553 (Ohio 2023) (Mem) ("*Marshall IV*"). Marshall, with counsel Kenneth Myers, moved the Ohio Supreme Court for reconsideration pursuant to S.Ct. Prac.R. 18.02 on April 10, 2023. (ECF Doc. 7-1, pp. 285-95). The State opposed on April 20, 2023. (*Id.* at pp. 296-98). On June 6, 2023, the Ohio Supreme Court denied Marshall's motion for reconsideration. (*Id.* at p. 299; *see also State v. Marshall*, 210 N.E.3d 553 (Ohio 2023) (table) ("*Marshall V*")).

Marshall did not appeal to the United States Supreme Court.

## IV.    Federal Habeas Corpus Petition

Marshall brings three grounds for relief in his Petition, timely filed in this Court on

December 20, 2023. (ECF Doc. 1).

> **GROUND ONE:** The Cuyahoga County, Ohio Court of Appeal made an unreasonabele [*sic*] determination of the facts in light of the evidence presented in the state court proceedings when it found that the erroneously admitted 404(b) evidence was harmless error under *Chapman v. California*, thus violating Petitioners [*sic*] "substantial rights" to a fair trial. See *28 U.S.C. 2254(d)(2)*.

> Supporting Facts: The court of appeals found this error to be harmless because of overwhelming evidence. The record does not support this finding. First, the court does not address any of the credibility issues that Petitioner points to in his appellate briefs. Secondly, the facts that the court based their decision on were inconsistent and conflicting, nor, as the court of appeals unreasonably state, was the victims' statements corroborated by other trial evidence. The record demonstrates that Petitioner was prejudiced by the erroneously admitted evidence because this evidence was directly linked to an element of the crime and there was no limited instruction given to reduce any impact this improperly admitted evidence possibly had on the jury's verdict. Essentially, the State failed to meet their burden of proving beyond a reasonable doubt that the erroneous admission of 404(b) "other acts" evidence was harmless.

> **GROUND TWO:** The Cuyahoga County, Ohio Court of Appeals unreasonable [*sic*] and contrarily applied *Chapman v. California*, when it ruled that the trial court erred when it erroneously admitted 404(b) evidence, but found the error to be harmless beyound [*sic*] a reasonable doubt, violatinf [*sic*] Petitioners' "substantial rights" to a fair trial. See *28 U.S.C. 2254(d)(1)*.
> Supporting Facts: The court of appeals did not reasonable apply Chapman v. California by failing to fully assess what impact this erroneously admitted 404(b) evidence possibly had on the verdict and also by unreasonably concluding that because of overwhelming evidence, this error was harmless. Essentially, the State failed to meet their burden of proving beyond a reasonable doubt that the erroneous admission of 404(b) "other acts" evidence was harmless.

> **GROUND THREE:** The trial court made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings when it improperly admitted, over objections, 404(b) evidence, thus violation [*sic*] Petitioner's right to a fair trail [*sic*]. See *28 U.S.C. 2254(d)(2)*.

> Supporting Facts: The trial court erroneously linked the alleged rape to Petitioner's alleged sexual activities for the purpose of admitting 404(b) evidence. This improper admission violated Petitioner' s Due Process right to a fair trial as guaranteed by the 14th Amendment.

(*Id.* at pp. 4-6).

## V.    Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Marshall's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

shall not be granted . . . unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

14

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted).  Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI.     Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review

claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.    Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B. Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim;

17

and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII.  Discussion

Marshall raises three grounds for relief in his petition before this Court. (ECF Doc. 1, pp. 4-6). His first two grounds for relief relate to the state appellate court's consideration of 404(b) evidence in light of *Chapman v. California*. (*See id*; *see also* ECF Doc. 11, pp. 5-28 *and* ECF Doc. 12, pp. 5-28). His third ground for relief relates to the state trial court admitting the 404(b)

evidence and its harmless error analysis under *Brecht v. Abramson*. (ECF Doc. 11, pp. 28-32; ECF Doc. 12, pp. 28-32). Because the first two grounds are closely related, I consider them together, and address the third separately.

### A.     Marshall has procedurally defaulted all Grounds for relief.

Marshall presents the following as his grounds for relief:

**GROUND 1:** The Cuyahoga County, Ohio Court of Appeal made an unreasonabele [*sic*] determination of the facts in light of the evidence presented in the state court proceedings when it found that the erroneously admitted 404(B) evidence was harmless error under *Chapman v. California*, thus violating Petitioners [*sic*] "substantial rights" to a fair trial. See *28 U.S.C. 2254(d)(2)*.

**GROUND 2:** The Cuyahoga County, Ohio Court of Appeals unreasonable [*sic*] and contrarily applied *Chapman v. California*, when it ruled that the trial court erred when it erroneously admitted 404(B) evidence, but found the error to be harmless beyound [*sic*] a reasonable doubt, violatinf [*sic*] Petitioners' "substantial rights" to a fair trial. See *28 U.S.C. 2254(d)(1)*.

**GROUND 3:** The trial court made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings when it improperly admitted, over objections, 404(b) evidence, thus violation [*sic*] Petitioner's right to a fair trail [*sic*]. See *28 U.S.C. 2254(d)(2)*.

(ECF Doc. 1, pp. 4-6Respondent ). In his amended Traverse, Marshall explains that the state appellate court's harmless error analysis was an unreasonable determination of the facts in light of the evidence presented in state court, and, further, that it was contrary to or involved an unreasonable application of the harmless error analysis presented in *Chapman v. California*. (ECF Doc. 12, pp. 1-2). Marshall takes issue with the state appellate court's finding that the trial court's error in admitting 404(b) evidence was harmless because of "overwhelming evidence." (*Id.* at pp. 3-19). He argues that the admission of 404(b) evidence of his prior sexual activities in his case prejudiced him and prevented him from having a fair trial in violation of the Due Process Clause of the Fourteenth Amendment as described in *Chapman* and *Brecht*. (*Id.* at pp.

19

26-28). In Ground Three, Marshall contends that the trial court reached an unreasonable determination of the facts in light of the evidence presented in state court proceedings. (ECF Doc. 12, p. 2, citing 28 U.S.C. 2254(d)(2)). He provides extensive review in his Amended Traverse challenging the facts presented in state court. (ECF Doc. 12, pp. 19-28).

Respondent argues the merits of Grounds One and Two and asserts this Court should deny Marshall's grounds for relief because he has not shown the state appellate court unreasonably applied *Chapman*. (ECF Doc. 7, pp. 16-26). Respondent elaborated on her merits argument in her sur-reply, but did not to raise the issue of fair presentation as to Grounds One and Two. Respondent agrees that Ground Three is procedurally defaulted. (ECF Doc. 7, p. 14).

Despite Respondent's briefing on the merits of Grounds One and Two, I determine that this Court, now sitting in federal habeas corpus review, may not reach the merits of these grounds because they are procedurally defaulted. Procedural default is not jurisdictional and the court is not obligated to raise it *sua sponte*. *Lovins*, 712 F.3d at 295. Nonetheless, the court may raise procedural default *sua sponte* even where Respondent has not raised it in his defense. *Id.* Moreover, the court may not waive the exhaustion requirement; it is for the state alone to waive the exhaustion requirement expressly, through counsel. *See* 28 U.S.C. § 2254(b)(3). Therefore, I determine Marshall did not fairly present his claims in state court, state court remedies are unavailable, and thereby Marshall has procedurally defaulted Grounds One and Two.

   1. **Grounds One and Two were not fairly presented to the state courts and are now procedurally defaulted.**

Exhaustion of state court remedies is a prerequisite for federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). Thus, for a state prisoner's claim to be available for federal habeas corpus review, the petitioner must first give state courts a "*fair* opportunity" to act on those claims. *O'Sullivan*, 526 U.S. at 844, citing 28 U.S.C. § 2254(c) (emphasis in original). "State

courts, like federal courts, are obliged to enforce federal law[,]" therefore, "state courts should have the first opportunity to review [a petitioner's] claim and provide any necessary relief." *Id.*; *see also Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) ("Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights . . . .") (internal quotations and marks omitted). To satisfy the fair presentation requirement, a petitioner must do more than present the "'substance'" of their claim to the state court; the petitioner "is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim" now presented in federal court. *Jalowiec*, 657 F.3d at 304, quoting *Picard v. Connor*, 404 U.S. 270, 275-78 (1971). The petitioner must also present the state court with the federal constitutional basis for their claims, which may be done by (1) relying upon federal cases employing constitutional analysis; (2) relying upon state cases employing federal constitutional analysis; (3) presenting the claim in sufficiently particular terms to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681; *see also Williams*, 460 F.3d at 807.

Failure to properly exhaust in state court can lead to procedural default of a federal habeas corpus petition. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In federal habeas, if a state court remedy is no longer available, regardless of the reason, that remedy is exhausted; but technical exhaustion via unavailability of a state court remedy does not automatically entitle the petitioner to litigate the merits of their claims in federal court. *Id.*

Here, my review of Marshall's claims brought in state court reveals that he did not fairly present those claims in a manner sufficient to meet the fair presentation requirement. In reviewing his motion for reconsideration, Marshall asserted:

1. The Court's determination that the evidence was overwhelming was clearly erroneous;

21

2.    The Court failed to consider the effect that inadmissible evidence had on the verdict.

(ECF Doc. 7-1, pp. 140, 145). Notably, neither of these assertions provide the same basis for relief as that requested in his petition before this Court. Moreover, looking within his memorandum in support of his motion for reconsideration, Marshall does not raise these claims on the basis of federal constitutional error. (*See* ECF Doc. 7-1, pp. 140-147). Rather, his claims are based in evidentiary issues and supported by Ohio law. (*See id.*).

Again, looking to Marshall's appeal of the appellate court's decision and its denial of his Application for Reconsideration to the Ohio Supreme Court on March 21, 2022, Marshall raised the following two propositions of law:

1.    In determining whether the erroneous admission of 404(B) evidence is harmless error, an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record. (State v. Morris, 2015-Ohio-5052, P. 33, 141 Ohio St. 3d 399, 242 N.E. 3d 1153, followed[)].

2.    The uncorroborated testimony and statements to others by the complainant alone cannot provide "overwhelming" evidence of guilt in harmless error cases.

(*Id.* at pp. 219-36; 238-65). As with his motion for reconsideration in the state appellate court, these two propositions of law are not the same as the grounds presented in his habeas petition. This failure to present the same issue in state court is not rectified in his memorandum in support of jurisdiction. (*See id.* at pp. 219-65).

Marshall clarifies in his sur-reply brief that the case relied upon in his first proposition of law – *State v. Morris*, 24 N.E. 3d 1153, (Ohio 2014) – employs *Chapman* in its analysis. (ECF Doc. 14, pp. 6-7). Thus, it may satisfy *McMeans* where that case permits fair presentation if a petitioner relies on state cases employing federal constitutional analysis. 228 F.3d at 681.

However, *McMeans* also instructs that, to meet the fair presentation requirement, the references in a petitioner's briefing must be sufficient to put the state court on notice that a constitutional claim had been asserted. *Id.* at 682 ("While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts."). As the Sixth Circuit found in *McMeans*, I also find that Marshall's briefing in state court was not enough to put the state court on notice of alleged constitutional error. While *Morris* does cite to *Chapman* in its analysis, citation to this case alone is not sufficient to permit fair presentation to the state courts. Marshall's brief in his motion for reconsideration does not raise a due process error with respect to the 404(b) evidence. The only reference to due process is in an error not presented to this Court – ineffective assistance of counsel. (ECF Doc. 7-1, p. 172). Nowhere in his memorandum in support of jurisdiction before the Ohio Supreme Court does Marshall raise due process, as he does now before this Court. (*Id.* at pp. 219-35). Rather, that brief, like in *McMeans*, focuses on state evidentiary issues. Thus, reliance on *Morris*, without more, is not enough for Marshall to fairly present his claims in federal habeas.

**2.      Ground Three was not fairly presented to the state courts and is now procedurally defaulted.**

Ground Three fails for the same reasoning as Grounds One and Two. Marshall argues that the trial court erred in permitting the 404(b) evidence, but he does not raise it as a federal constitutional error violating his Due Process rights until he reached federal court. (*See* ECF Doc. 1, p. 6 *and* ECF Doc. 12, pp. 19-28). In his motion *in limine* at trial, Marshall argued the

evidence should not be permitted under Ohio Revised Code § 2907.02(D); § 2945.59; and Ohio

Evidence Rule 404(B). (ECF Doc. 7-1, pp. 13-15). He did not raise federal error at that stage of

his state court proceedings. (*See id.* ("Assignment of Error No. 2. The trial court erred in its

admission of evidence which did not qualify under the exceptions for propensity evidence under

Evid.R. 404(B)"). Likewise, his brief on direct appeal only raises error in terms of state law.

(*Id.* at pp. 60-65). But as with the first two Grounds for Relief, this issue is not raised in terms of

constitutional error, nor a violation of Marshall's Due Process rights. (*See id.*). At best, the brief

makes passing analogies between Ohio Rule of Evidence 404(b) and the equivalent Federal Rule

of Evidence 404(b) and references a Tenth Circuit case. (*See id.* at pp. 61-63). But this is not

enough to make a fair presentation to the state sufficient to reach merits review in federal habeas

corpus proceedings.

Thus, despite bringing similar claims to the state court, he has failed to fairly present his

claims to the state court on the same basis as he now asks of this Court. As a result, he has not

given the state courts an opportunity to correct any alleged constitutional error. Marshall no

longer has state court remedies available for relief. As a result, this failure to properly exhaust his

claims in state court has resulted in procedural default of his grounds here.

### B.     Neither cause and prejudice nor actual innocence serve to excuse procedural default of his Grounds for Relief.

Even where a petitioner has procedurally defaulted their claim, they may still obtain

review of procedurally defaulted claims by showing: (1) "cause," *i.e.*, that some external factor

kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice,"

*i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability

that a different verdict would have resulted if the alleged constitutional violation hadn't occurred.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337

(6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if his procedurally defaulted claim is based on new evidence that he was factually innocent of the crime of conviction.  *See Coleman*, 501 U.S. at 750 (describing the "fundamental miscarriage of justice" exception to procedural default); *see also Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But even so, it is a high standard to demonstrate actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Id.* Moreover, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Marshall has not overcome the procedural default of his claims. He argues only the merits of his grounds for relief in his Amended Traverse and does not address the procedural default of his claims in his briefings. (*See* ECF Docs. 12, 14). He has not presented cause to excuse his failure to fairly present his claim in state court. *Coleman*, 501 U.S. at 750. If a petitioner fails to demonstrate cause for the procedural default, then the court need not reach the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986). I therefore decline to address whether prejudice would excuse procedural default in this case.

Additionally, Marshall has not demonstrated actual innocence. He has not asserted his factual innocence, rather, he asserts only the legal insufficiency of the evidence at trial once the

25

propensity evidence is excluded. (*See* ECF Doc. 12). This is not enough to overcome the procedural bar to federal review of the merits of his claims.

I therefore recommend the District Court dismiss all grounds in Marshall's petition as procedurally defaulted.

### C.    Even if Ground Three is not procedurally defaulted, it is not cognizable in federal habeas corpus review.

Marshall brings as his third ground for relief:

**Ground Three:** The trial court made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings when it improperly admitted, over objections, 404(b) evidence, thus violation [*sic*] Petitioner's right to a fair trail [*sic*]. See *28 U.S.C. 2254(d)(2).*

Supporting Facts: The trial court erroneously linked the alleged rape to Petitioner's alleged sexual activities for the purpose of admitting 404(b) evidence. This improper admission violated Petitioner' s Due Process right to a fair trial as guaranteed by the 14th Amendment.

(ECF Doc. 1, pp. 4-6). However, this claim is not available to him in federal habeas corpus review. Under AEDPA, an application for a writ of habeas corpus for a state petitioner shall not be granted unless the state's adjudication of the claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The U.S. Supreme Court has not clearly established that a state court's admission of propensity evidence is unconstitutional. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent."). Indeed, the U.S. Supreme Court, in *Estelle v. McGuire*, stated "[b]ecause we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." 502 U.S. 62, 75 n.5 (1991). A petitioner's disagreement with the state's admission of 404(b) evidence does not raise a constitutional claim cognizable in federal habeas corpus review,

even where the petitioner claims, as here, the evidence was sufficiently prejudicial as to deny him due process. *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (holding that the admission of "other acts" evidence was not contrary to Supreme Court precedent and was not cognizable on federal habeas review).

For these reasons, I determine Marshall's claim in Ground Three is not cognizable and recommend in the alternative that the District Court deny Marshall's petition as to this ground.

## VIII.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, it is well-established that a petitioner must provide a full and fair presentation of his claims in the state court on the same grounds as those presented in federal court. *O'Sullivan*, 526 U.S. at 845. As discussed above, Marshall has procedurally defaulted the grounds raised in this petition and has not shown that he is entitled to excuse that default. Moreover, his third ground for relief is not cognizable in this Court, because there is no clearly established Supreme Court precedent establishing a due process violation for permitting propensity evidence. *Bugh*, 329 F.3d at 512. Thus, if the District Court accepts my recommendations, Marshall will not be able to show that my conclusions in this Report and Recommendation are debatable. Therefore, I recommend that no certificate of appealability issue in this case.

## IX.   Recommendation

For the foregoing reasons, I recommend dismissing Marshall's federal habeas corpus petition as procedurally defaulted, and denying as to Ground Three as not cognizable. I further recommend he be denied a certificate of appealability.


Dated: December 16, 2024

Reuben J. Sheperd
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

28

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).